IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| JOSE ALBERTO HERNANDEZ <br> Plaintiff <br> vs <br> RAYTHEON SERVICE COMPANY PUERTO RICO <br> Defendants | CIVIL 05-1937CCC |

## OPINION AND REMAND ORDER

This action, alleging wage and hour violations, retaliation, and unjust dismissal was removed pursuant to our diversity jurisdiction by defendant Raytheon Service Company Puerto Rico. It was originally filed in the Commonwealth of Puerto Rico Court of First Instance, San Lorenzo Division.

Plaintiff José Alberto Hernández, in his original complaint, alleges that while he worked for Raytheon as an electronic technician he worked twelve-hour shifts without a lunch break and had to eat his lunch in front of the computers and the telephone in the event that they required his attention, in which case he had to stop eating to attend to the equipment. He also states that he had to work during his food breaks (sic) to which he was entitled.[1] Hernández alleges that he suffered an occupational accident shortly before he was discharged on January 31, 2005. He contends that he and other employees who were receiving benefits from the State Insurance Fund (SIF) or had occupational accidents were discharged,[2] while other employees with less seniority were kept in their positions. He claims damages for loss of income and

---

[1]Although the law is not identified by citation, the claim states a cause of action under Act 379, 29 L.P.R.A. §271, et seq.

[2]This would constitute the retaliation claim under Act 115 of December 20, 1991, 29 L.P.R.A. §194, et seq.

CIVIL 05-1937CCC                           2

mental and moral damages and reinstatement in his position, the amounts owed for having worked during his food breaks. In the alternative to the specific damages requested for the unlawful dismissal, he seeks statutory indemnity pursuant to Law 80 of May 30, 1976.

Now before us are plaintiff's Motion to Remand (**docket entry 4**) filed September 2, 2005, because he seeks leave to amend the complaint and his Motion for Leave to Amend the Complaint (**docket entry 7**), filed on September 16, 2005,[3] would add an additional defendant, his site supervisor José Meléndez, a resident of Puerto Rico, which would destroy diversity. Plaintiff contends that Meléndez instigated the unjustified, unlawful, and discriminatory acts alleged. Raytheon has filed both an opposition to the Motion to Remand (**docket entry 6**) and an Objection to [the] Amended Complaint (**docket entry 8**). Both parties have filed motions for leave to file another round of replies and surreplies as to both motions (**docket entries 9, 10, 11, and 12**) which are GRANTED, and which have been considered by the court in reaching its decision.

Defendant contends that plaintiff is seeking joinder of the new defendant only to destroy diversity and, therefore, it is a fraudulent joinder and done in bad faith. To support its contention of bad faith in seeking a fraudulent joinder, Raytheon includes with its opposition copies of e-mails, discussing the diversity issue, by which plaintiff sought evidence that defendant was indeed a foreign corporation. It is defendant's position that none of the Puerto Rico laws invoked allow claims against individuals. Defendant , at page 7 of its opposition, provides a long discussion of the fact that federal "anti-discrimination laws such as the Age Discrimination in Employment Act and Title VII do not hold employees personally liable for their individual actions, but will hold liable its (sic) employers." The plaintiff, however, has not brought any claims pursuant to either of these statutes. Defendants are correct in their observation that Law

---

[3]The Motion to Remand (docket entry 4) was filed before the Motion for Leave to Amend th Complaint (docket entry 7), because there were errors in the first attempt to file the amended complaint (docket entry 3).

CIVIL 05-1937CCC                                3

80 and Act 379 do not include supervisors under their definition of employers.  The analogy between Laws 100 and 115 is a correct one; however, the decision on which Raytheon relies, <u>Figueroa v. Mateo, Inc.</u>, 939 F. Supp. 106 (D. Puerto Rico 1996), which cites <u>Secretary of Labor v. Ibarra García</u>, 88 P.R.R. 494(1963), ruling that supervisors are not liable under Law 100, is no longer the applicable jurisprudence.

The Supreme Court of Puerto Rico made its definitive ruling on the issue of personal liability in <u>Rosario v. Distribuidora Kikuet</u>, Inc., 151 D.P.R. 634(2000), in which it stated that

> An agent, official, administrator or supervisor of a company is civilly liable in his personal capacity, for the purposes of Laws 17, 69 and 100 [ ], in addition to the real employer, for the acts of sexual harassment against the worker or employee of the employer.

<u>Id</u>. at 647 (our translation).

In the first paragraph of <u>Kikuet</u>, the Court sets forth the issue of whether "the definition of "employer" in the laws that <u>prohibit employment discrimination</u>, sexual harassment, extended to the . . . alleged victim's supervisor, when he is the direct author of the conduct in question."  (Our emphasis.)  As stated by the Court in the same decision:

> Labor laws are of a remedial character, with an eminently social and curative purpose.  They are instruments for protecting the working class for sexual harassment and <u>discriminatory acts</u> of the employer in the workplace.  Their liberal interpretation, in favor of those whom they intend to protect, is imperative.

<u>Id</u>. at 641 (citations omitted)(our emphasis).

Although that case was about sexual harassment, the statements in the opinion include "discriminatory acts" and "employment discrimination," as emphasized in the quotes above. We note that this court has interpreted Kikuet to include supervisory liability under Law 100 in the broader sense.  See, <u>Díaz-Rivera v. El Día, Inc.</u>, 2005 WL 2333645(D. Puerto Rico); <u>Acevedo Martínez v.Coatings, Inc. and Co.</u>, 251 F. Supp. 2d 1058 (D. Puerto Rico 2003); <u>Rodríguez v. Econo Supermarkets</u>, 204 F. Supp. 2d 289 (D. Puerto Rico 2002).

CIVIL 05-1937CCC                              4

Given the Supreme Court's expressions in Kikuet and earlier cases, see, e.g. Irizarry v. Johnson & Johnson, 150 D.P.R. 155, 165 (2000); Ramírez de Ferrer v. Mari Bras, 142 D.P.R. 941 (1997) and Santiago v. Kodak, 129 D.P.R. 763 (1992), interpreting the protective labor laws liberally in favor of the employee, we conclude that Law 115 also includes personal liability of a supervisor who retaliates against an employee of the company.

Joinder or substitution of nondiverse defendants after removal destroys diversity jurisdiction, regardless of whether such defendants are dispensable or indispensable. Casas Office Machines, Inc. v. Mita Copystar America, Inc., 42 F.3d. 668, 674 (1st Cir. 1994). Title 28 U.S.C.§1447(e) governs the two issues now before us. First we must decide whether leave should be granted to bring Meléndez, a nondiverse party, as a defendant pursuant to Law 115. Second, we must decide whether such an amendment would require that the case be remanded. See, Arroyo Irizarry v. Marine Powers International, 153 F.R.D. 12 (D. Puerto Rico 1994). Section 1447(e) specifically provides that, "[i]f after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny the joinder, or permit joinder and remand the action to the State court.... A non-diverse party need not be indispensable as defined by Fed.R.Cv.P. 19 in order for a district court to permit joinder and remand the action to state court." Arroyo Irizarry, supra, at 13. "Virtually every court confronted with this issue has unanimously agreed that the statute compels a court to focus on whether joinder would be 'equitable' instead of being indispensable." Id., at14. (Citations omitted.)

Justice requires that the district court consider a number of factors to balance the original defendant's interest in maintaining the federal forum with the competing interests of not having parallel lawsuits. Hensgens v. Deere & Co., 833 F.2d 1179, 1182 (5th Cir. 1987). The factors generally considered by the Courts in the analysis of whether the joinder would be "equitable" include: (1) the extent to which the purpose of the amendment is to defeat federal jurisdiction, (2) whether the plaintiff has been dilatory in seeking the amendment, (3) whether

CIVIL 05-1937CCC                                 5

plaintiff will be significantly injured if joinder is denied, and (4) any other factor bearing on the equities.  Schindler v. Charles Schwab & Co., 2005 WL 1155862*2 (E.D.La.) citing Hensgens, supra, at 1182.

    Raytheon urges to deny the motion to amend, arguing that the joinder is fraudulent because its only purpose it to destroy diversity.  Fraudulent joinder is a term of art used to describe not only the deceptive practice of joining a resident defendant solely to defeat diversity, but also any improper one.  Pastrana Montañez v. Solstar Corporation, 46 F. Supp. 101, 102 (D. Puerto Rico 1999).  "It exists when a plaintiff joins a resident defendant having no real connection with the controversy."  Id.  In the case before us, however, the individual sought to be joined, plaintiff's supervisor José Meléndez, does have a real connection to the case; he is the person alleged to have instigated the actions against plaintiff for having reported to the SIF and/or suffered a work accident, for which, contrary to defendant's argument, he can be found personally liable under Law 115.

> [D]istrict Courts have considered whether the plaintiff knew or should have known the identity of the non-diverse defendant when the state court complaint was filed.  Courts have held that a plaintiff's failure to join a non-diverse defendant to an action prior to removal when such plaintiff knew of a non-diverse defendants identity and activities suggests that the purpose of the amendment is to destroy diversity jurisdiction....  However courts have also recognized when a plaintiff states a valid claim against a defendant, it is unlikely that the primary purpose of bringing [that] defendant[ ] into a litigation is to destroy diversity.

(Citations omitted.)  Schindler, supra, at*3.

    In the case before us, Raytheon has filed copies of correspondence between the parties related to the plaintiff's questioning the grounds for removal.  In his motion to remand Hernandez states, at p. 2:

> 4. In the instant matter, plaintiff has chosen to join a joint tortfeasor, José Meléndez (hereinafter "Meléndez"), as defendant in his cause of action for retaliation for requesting benefits under the Puerto Rico's Workers Compensation Statute.  Meléndez, who was the site supervisor of defendant, instigated the termination of those employees who suffered occupational accidents and obtained benefits from the State Insurance Fund Corporation.

CIVIL 05-1937CCC                                    6

        5. This is not a fraudulent joinder of a defendant because the cause of action against the company is based on its vicarious liability for Meléndez' actions.

As we stated above, the claim against Meléndez under Law 115 is a valid one. Although not specifically identified as being brought under that statute, the facts supporting the claim are found in the original complaint. The fact that Meléndez has an undisputed connection with the claims against Raytheon militates against a finding that plaintiff's sole purpose in amending his complaint would be to destroy diversity. Id. We therefore find that this factor weighs in favor of plaintiff.

Moreover, for fraudulent joinder, a **defendant** must show to **a legal certainty** . . . that plaintiff should have known those actual facts at the time of filing. In re: Maine Asbestos Cases, 44 F.Supp. 2d 368 (D. Maine 1999). Raytheon has not even mentioned the matter of obviousness of Meléndez' role in the dismissal.

The second Hensgens factor to consider is whether plaintiff has been dilatory in requesting the amendment to the complaint. In analyzing whether a plaintiff has been dilatory in seeking an amendment, district courts often look to the amount of time that has passed between the filing of the original complaint and the amendment and the amount of time between the removal and the amendment. Id., at*4. In our case, the original complaint was filed in the state court on July 11, 2005. The notice of removal was filed approximately seven weeks thereafter, on September 2, 2005. Plaintiff's first attempt to amend the complaint occurred 11 days later, on September 13, 2005, and the motion for leave to amend was filed three days later, on September 16, 2005 (docket entry 7).

Plaintiff's motion to amend falls well with the parameters noted in Schindler, see, e.g. Johnson v. Sepulveda Prop., 1999 WL 728746 at *3 (E.D.La.)(amendment requested two months after state court petition filed held not dilatory); McNeel v. Kemper Cas. Ins Co., 2004 WL 1635757, at *3(M.D.Tex) (amendment requested five months after state court petition filed and six weeks after removal held not dilatory); Holcomb v. Brience, Inc., 2001 WL

CIVIL 05-1937CCC                                   7

1480756, at *2 (N.D.Tex) (amendment requested two months and one week after state court petition filed and one month and one week after removal held not dilatory).  <u>Shumpert v. General Motors Corporation</u>, 1996 W.L. 408093 (N.D. Miss.) (motion to amend filed almost seven weeks after removal held not dilatory).

      The third factor to be considered is the injury to the plaintiff by denying the amendment. As in other cases of this nature, denying the remand would impose a significant financial burden on plaintiff if he were to be forced to ligate his retaliation claim against a single defendant in each of the two forums.

      We must also consider that, as in <u>Schindler</u>, this litigation is still in its very early stages. Defendant has yet to answer the complaint, and everything filed as of this point is related to the jurisdictional issue.

      For the above-stated reasons, we find that the balance of interests weighs in favor of allowing plaintiff to amend his complaint. Accordingly, the Motion for Leave to Amend the Complaint (**docket entry 7**) and the Motion to Remand (**docket entry 4**) are both GRANTED. The Clerk of Court shall file the tendered amended complaint and thereafter enter judgment remanding the action to the Court of First Instance, San Lorenzo Division.

      SO ORDERED.

      At San Juan, Puerto Rico, on April 26, 2006.

                                          S/CARMEN CONSUELO CEREZO
                                          United States District Judge